UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>human</u>,
    Plaintiff

    v.                                      Case No. 13-cv-296-SM
                                                    Opinion No. 2015 DNH 012
<u>Anthony F. Colarusso, Jr.</u>,
    Defendant

**O R D E R**

Pro se plaintiff, David Montenegro (a/k/a human), brings this action against Anthony Colarusso, in his official capacity as Chief of Police for Dover, New Hampshire. Plaintiff claims he was the victim of a retaliatory prosecution in violation of the First Amendment (count one) and a malicious prosecution in violation of the Fourth Amendment (count two). Pending before the court is defendant's motion for summary judgment on both of plaintiff's remaining claims. For the reasons discussed, that motion is granted.

**Standard of Review**

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate

when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence."  Int'l Ass'n of Machinists & Aero. Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

This case is somewhat atypical in that plaintiff has neither objected to defendant's motion (his objection was due on or before January 12, 2015), nor has he sought additional time to file an objection.  Accordingly, the court will take as admitted the factual statements recited in defendant's motion, as supported by the attached exhibits.  See Local Rule 56.1(b) ("All properly supported material facts set forth in the moving party's factual statement may be deemed admitted unless properly opposed by the adverse party.").  See also Puerto Rico American Ins. Co. v. Rivera-Vazquez, 603 F.3d 125, 131 (1st Cir. 2010) (discussing Puerto Rico's analog to Local Rule 56.1(b), also known as the "anti-ferret rule," and holding that, "This type of rule is aimed at enabling a district court to adjudicate a summary judgment motion without endless rummaging through a plethoric record. Given this root purpose, we have held with a regularity bordering

on the monotonous that parties ignore the strictures of an 'anti-ferret' rule at their peril.") (citations omitted).

Of course plaintiff's failure to object does not automatically entitle defendant to judgment as a matter of law. The court must still determine whether the uncontested facts presented by defendant, when viewed in the light most favorable to plaintiff, entitle defendant to judgment as a matter of law. See, e.g., Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003).

**Background**

In response to what he believed was "malfeasance in the [Dover] police department," plaintiff began a series of "regular public protests, on a sidewalk in downtown Dover, condemning police misconduct." Complaint at 2. He says he "applied for and received licenses for all such demonstrations," and each was conducted "in full compliance with all applicable state and local law." Id. His demonstrations, says plaintiff, prompted the Dover Police Department to begin a campaign of harassment and intimidation against him. One of those alleged instances of harassment gave rise to this action.

On November 29, 2008, Sergeant Jeffrey Mutter and Officer Scott Petrin of the Dover Police Department observed plaintiff in the process of setting up one of his protests at the intersection of Central Avenue and First Street.  <u>See</u> Incident Report of Sgt. Jeffrey Mutter (document no. 25-4).  Plaintiff had assembled a small folding table, with cement blocks at the bottom of its legs to act as anchors.  On the table, he rested a large red sign that read, "Stop Police Corruption."  He also placed a tri-pod, onto which he affixed a video camera, adjacent to the display.  Plaintiff erected his display on the edge of the sidewalk, where it slopes downward to meet the road, at the intersection of two pedestrian cross walks.  Photographs of the scene taken by Sergeant Mutter unmistakably show that plaintiff's display obstructed pedestrian traffic at that intersection, forcing people to walk around his display to access the crosswalks.  <u>See</u> Incident Report at 5-9.

The officers approached plaintiff, who immediately began video taping their interactions.  According to Sergeant Mutter, the officers' interaction with plaintiff unfolded as follows:

> Montenegro would not accept my greeting without first having his video camera on.  I then extended a second greeting and handshake to introduce myself.  I initiated an explanation of our presence, however Montenegro interrupted and insisted on showing me his City license prior to listening to what I wanted to explain to him and why.  After viewing his license, I

> attempted to explain that his current display location
> was in violation of the disorderly conduct law,
> specifically as the law pertained to obstructing
> pedestrian traffic on any public street or sidewalk.
>
> I told Montenegro my reasons for explaining this issue
> was to prevent him from wasting his time and effort
> with setting up in a place that was clearly an
> obstruction of the crosswalks and to foot traffic.
> Montenegro insisted on relying on his licensing,
> referring that he had permission [to erect his display]
> on any part of Central Ave. within the specified time
> limits, and that he chose this location due to the high
> volume of foot traffic.  I again tried to explain that
> although he was correct about his license, it was his
> location that was the issue at hand.

Id. at 4.

Sergeant Mutter then gave plaintiff examples of where he could assemble his display without running afoul of the disorderly conduct statute and still remain visible to the public.  He also provided plaintiff with a copy of New Hampshire's law on disorderly conduct, which plaintiff read in his presence.  Nevertheless, plaintiff remained insistent that he had the right to maintain his display in its current location. Sergeant Mutter explained that plaintiff's interpretation of the law was incorrect and that he had to move the display.  He then told plaintiff that he was going to take some additional photographs of the scene and, when he returned, he was going to give plaintiff another opportunity to relocate his display.

Sergeant Mutter explained that if plaintiff continued to refuse to move his display, he would be arrested for disorderly conduct.

After taking several photographs of the scene from different angles, Sergeant Mutter returned to plaintiff and asked if he was willing to change the location of his display.  Plaintiff said he was not.  Sergeant Mutter then instructed Officer Petrin to place plaintiff under arrest.  Plaintiff peacefully turned around, placed his hands behind his back, and was taken into custody without incident.  His display table and personal effects were secured and placed into Officer Petrin's cruiser.  Sergeant Mutter explained to plaintiff that they would be taken to the police station, and returned to him upon his release.

Subsequently, the County Attorney prosecuted plaintiff for disorderly conduct, in violation of N.H. Rev. Stat. Ann. ("RSA") 644:2.  That statute provides that an individual is guilty of disorderly conduct if, among other things, he or she:

> Obstructs vehicular or pedestrian traffic on any public street or sidewalk or the entrance to any public building; or

* * *

> Knowingly refuses to comply with a lawful order of a peace officer to move from or remain away from any public place.

RSA 644:2 II(c) and (e).  Plaintiff was convicted in the state district court but, upon appeal and trial de novo, he was acquitted by a jury.  Approximately three years later, he filed this action.

## Discussion

Plaintiff advances his constitutional claims against Police Chief Anthony Colarusso, in his official capacity, asserting that the police officers who arrested him were acting under Colarusso's "leadership and direction" when they (allegedly unlawfully) arrested him.  Complaint at 3.  According to plaintiff, the disorderly conduct charges against him were "trumped-up" at the direction of Chief Colarusso, in response to plaintiff's lawful (and constitutionally protected) free speech.  See Id.

As noted above, two claims from plaintiff's original complaint remain: one for retaliatory prosecution in violation of the First Amendment, and one for malicious prosecution in violation of the Fourth Amendment.  Those claims against the police chief in his official capacity are, in effect, claims against the City of Dover.  See Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which

7

an officer is an agent. . . . [A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.") (citations and internal quotation marks omitted) (emphasis in original).

Plaintiffs constitutional claims fail for several reasons, all of which are throughly and capably discussed in defendant's supporting memorandum of law (document no. 25-1). Most obviously, plaintiff's claims fall short because he cannot demonstrate that his arrest for disturbing the peace was unsupported by probable cause - an essential element of both claims.[1]

---

[1] It probably bears noting that plaintiff was not immunized from arrest for disturbing the peace merely because he was engaged in constitutionally protected free speech. See, e.g., Cornelius v. NAACP Legal Defense and Educational Fund, Inc., 473 U.S. 788, 799-800 (1985) ("Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities."); Gericke v. Begin, 753 F.3d 1, 8 (1st Cir. 2014) ("Although the government may restrict the First Amendment right to use streets for assembly and communication through appropriate regulations, that right remains unfettered unless and until the government passes such regulations. Such a restriction could take the form of a reasonable, contemporaneous order from a police officer, or a preexisting statute, ordinance, regulation, or other published restriction with a legitimate governmental purpose.") (citation and internal punctuation omitted).

To prevail on either his claim for retaliatory prosecution in violation of the First Amendment, or his claim for malicious prosecution in violation of the Fourth Amendment, plaintiff must first demonstrate that his arrest was not supported by probable cause. See, e.g., Gericke v. Begin, 753 F.3d 1, 6 (1st Cir. 2014) ("In a section 1983 claim of retaliatory prosecution for First Amendment activity, a plaintiff must prove that her conduct was constitutionally protected and was a 'substantial' or 'motivating' factor for the retaliatory decision and that there was no probable cause for the criminal charge.") (citations omitted); Hernandez-Cuevas v. Taylor, 723 F.3d 91, 100-01 (1st Cir. 2013) ("As to the elements of such a [Fourth Amendment malicious prosecution] claim, we join those four circuits that have adopted a purely constitutional approach, holding that a plaintiff may bring a suit under § 1983 (or Bivens) if he can establish that: the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor.") (footnote, citation, and internal punctuation omitted). See also Hartman v. Moore, 547 U.S. 250, 266 (2006).[2]

---

[2] Parenthetically, the court notes that there is some question as to whether (or under what circumstances) a plaintiff may maintain a First Amendment claim for retaliatory arrest despite the presence of probable cause. See generally Reichle v. Howards, 132 S. Ct. 2088 (2012). See also Traudt v. Roberts, 2013 WL 3754862, 2013 DNH 94 (D.N.H. July 15, 2013). But, the court need not address that issue because plaintiff's claim for

In describing the concept (and contours) of "probable cause," the court of appeals for this circuit has noted the following:

> A police officer has probable cause when, at the time of the arrest, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense. In determining whether the officer had probable cause, we must view the circumstances from the perspective of a reasonable person in the position of the officer. Probable cause requires only a probability that the defendant committed the crime. The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable.
>
> The question of probable cause, like the question of reasonable suspicion, is an objective inquiry. The actual motive or thought process of the officer is not plumbed. The only relevant facts are those known to the officer. When these facts are in reasonable dispute, the fact-finder must resolve the dispute. However, when the underlying facts claimed to support probable cause are not in dispute, whether those "raw facts" constitute probable cause is an issue of law that we must determine de novo.

Holder v. Town of Sandown, 585 F.3d 500, 504 (1st Cir. 2009) (citations and internal punctuation omitted). Here, the undisputed material facts of record - including photographs of the scene - demonstrate beyond reasonable contention that the

---

retaliatory arrest was dismissed by order dated September 8, 2014. Only plaintiff's claims relating to his prosecution for disorderly conduct remain.

Dover police officers had probable cause to arrest plaintiff for disturbing the peace. See RSA 644:2 II(c) and (e). Plaintiff's display obstructed pedestrian traffic on a public street/sidewalk. See Incident Report at 5-9 (photographs plaintiff's display). Moreover, plaintiff knowingly refused to comply with Sergeant Mutter's (repeated) lawful requests to relocate the display to an alternate location. Finally, while plaintiff's initial conviction for disorderly conduct before the state district court holds no preclusive effect in this litigation, see generally RSA 599:1, that the state court judge concluded there was sufficient evidence to convict plaintiff of that charge is certainly consistent with the conclusion that the officers had probable cause to arrest him.[3]

Because plaintiff's arrest was amply supported by probable cause, he cannot, as a matter of law, demonstrate that either his First or Fourth Amendment rights were violated when he was prosecuted for disturbing the peace. Consequently, plaintiff's

---

[3] Notwithstanding plaintiff's claim that he conducted his protest "in full compliance with all applicable state and local law," complaint at 2, it is doubtful that the permit he obtained from the city was so broad in scope as to permit obstruction of pedestrian traffic at the crosswalk. But, in any event, it is plaintiff's burden to establish that his arrest was not supported by probable cause and he has made no attempt to do so. Not only has he failed to provide the court with a copy of his permit, but he has also declined to respond to defendant's motion for summary judgment. On this record, it is plain that the officers had probable cause to arrest plaintiff for disturbing the peace.

section 1983 claims against the police chief, in his official capacity, necessarily fail. See Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (holding that "[i]f a person has suffered no constitutional injury at the hands of the individual police officer," that person has no claim under section 1983 against the officer's municipal employer). See also Robinson v. Cook, 706 F.3d 25, 38 (1st Cir. 2013); Kennedy v. Town Of Billerica, 617 F.3d 520, 532 (1st Cir. 2010).

## Conclusion

For the foregoing reasons, as well as those set forth in defendant's legal memorandum, defendant's motion for summary judgment on all of plaintiff's remaining claims (document no. 25) is granted. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 15, 2015

cc: human
    Samantha D. Elliott, Esq.